**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WESTERN COMMERCIAL TRANS-PORT, INC., Respondent.**

No. 73–1707

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1973.

Rehearing Denied Feb. 13, 1974.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington D. C., Elmer P. Davis, Director, Region 16, N.L.R.B., Fort Worth, Tex., for petitioner.

Edward L. Kemble, Denis L. Toothe, Fort Worth, Tex., for respondent.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

PER CURIAM:

The National Labor Relations Board found that Western Commercial Transport, Inc. violated Section 8(a)((1) and (2) of the National Labor Relations Act by recognizing, bargaining and contracting with South West Tank Line Union while there was an existing question concerning representation by another union. The Board ordered the Company to withdraw recognition from Tank Line Union, set aside the bargaining agreement, post appropriate notices, and cease and desist from further recognition and bargaining with Tank Line Union unless and until the Board shall have certified that Union as the bargaining representative. We find substantial evidence in the record to support the Board's findings and enforce the Order.

In 1966, the Company entered into a collective bargaining agreement with another union, Southern Conference of Teamsters, after election and certification by the Board of Southern Conference as the statutory bargaining representative. Written to expire August 1, 1970, the contract was orally extended to August 1, 1971, with indications that a Master Agreement might then become effective. A dispute arose over the Master Agreement, and on September 20, 1971, the Company instituted a federal court action to have the Master Agreement declared null and void and of no force and effect. Southern Conference counterclaimed for specific performance of the Master Agreement. On November 28, 1972, the District Court found in favor of the Company, holding the Master Agreement void.

Prior to the court decree, during March, 1972, the Company was presented with designation cards signed by 89 of the 162 unit employees by Tank Line Union. After some 14 negotiation sessions, the Company executed a bargaining agreement with Tank Line Union to become effective May 1, 1972. At no time did the. Company notify the Southern Conference of Teamsters Union of a rival claim to representative status.

Under the doctrine of Midwest Piping & Supply Co., 63 N.L.R.B. 1060 (1945), an employer faced with conflicting claims of rival unions which give rise to a question concerning representation must adhere to a policy of strict neutrality and may not recognize or enter into a contract with either union until one has been certified under the procedures provided by the Act. Oil Transport Co. v. NLRB, 440 F.2d 664 (5th Cir. 1971); NLRB v. Signal Oil & Gas Co., 303 F.2d 785 (5th Cir. 1962). There is substantial evidence to support the Board's finding that a real question of representation existed at the time the Company and Tank Line Union bargained and then executed a collective bargaining agreement. Tank Line Union's possession of authorization cards from a majority of the employees did not foreclose the existence of a substantial representational question. See Oil Transport Co. v. NLRB, *supra,* 440 F.2d at 665.

The Company, however, contends that it was entitled to recognize Tank Line Union after the latter presented its authorization cards because Southern Conference's certification period had expired and, as the District Court subsequently held, no collective bargaining agreement existed. These facts are beside the point. The issue to be resolved is whether there was a bona fide issue as to representation at the time the Company recognized Tank Line Union. The Board argues convincingly that Southern Conference made apparent its interest in preserving its status as the

employees' collective bargaining agent by its defense and counterclaim in the Master Agreement litigation. Such conduct provides sufficient justification for the Board's finding that the issue of representation was in doubt, rather than settled, by Tank Line Union's authorization cards. At the same time Tank Line Union was negotiating on behalf of the employees for an agreement, Southern Conference was attempting to enforce the Master Agreement for the same employees through litigation. The conflicting claim to representation at that time is apparent.

■■ An employer who assumes the responsibility of deciding which of two rival unions represents his employees assumes also the risk that the Board will find a genuine issue of representation and an unfair labor practice in his lack of neutrality. The Company could have avoided this result by petitioning the Board for an election under Section 9(c)(1)(B) of the Act. *See* NLRB v. Hunter Outdoor Products, Inc., 440 F.2d 876, 880 (1st Cir. 1971); NLRB v. Signal Oil & Gas Co., *supra*, 300 F.2d at 788 n. 3.

NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), does not mandate otherwise. That case upheld the Board's authority to find violation of Section 8(a)(5) where an employer refused to bargain with a union which had presented authorization cards representing a majority of the bargaining unit. The Court noted, however, that an employer need not accept a card check as proof of majority status, but could petition the Board for an election. Moreover, in *Gissel,* unlike the present case, there were no rival claims of representation. An employer faced with the claims of rival unions can refuse to bargain without violating Section 8(a)(5) until the Board determines that a representation question does not exist. NLRB v. Downtown Bakery Corp., 330 F.2d 921, 928 (6th Cir. 1964); NLRB v. Signal Oil & Gas Co., *supra,* 303 F.2d at 788 n. 3.

Enforced.